# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisa DeVault, | ) |
| Plaintiff, | ) CIV 11-01423 PHX RCB (MEA) |
| v. | ) REPORT AND RECOMMENDATION |
| Maricopa County, et al., | ) |
| Defendants. | ) |

**TO THE HONORABLE ROBERT C. BROOMFIELD:**

This matter is before the Magistrate Judge on referral from the District Judge, and the determination of the Magistrate Judge is dispositive of some of Plaintiff's claims. Accordingly, the following proposed findings of fact, report, and recommendation are made pursuant to Rule 72(b), Federal Rules of Civil Procedure, and 28 U.S.C. § 636(b)(1)(B) and (C).

**Background**

Plaintiff, who is represented by counsel in this matter, filed a complaint in the Maricopa County Superior Court on March 10, 2011. The complaint alleges a state-law cause of action for negligence, i.e., medical malpractice, and a cause of action for violation of Plaintiff's rights pursuant to 42 U.S.C. § 1983, i.e., deliberate indifference to Plaintiff's serious medical needs in violation her federal constitutional rights.

Plaintiff alleges Defendants failed to provide adequate medical care to Plaintiff (for an infection arising from a leg injury sustained prior to her incarceration), while Plaintiff was a pretrial detainee in a jail operated by the Maricopa County Sheriff's office, in March through May of 2009.[1] The complaint seeks compensatory and consequential damages, damages for pain and suffering, punitive damages, and an award of attorneys' fees.

Defendants were served and the matter was removed to federal court by Defendants on July 18, 2011. On July 22, 2011, the Court ordered Defendants to answer or otherwise respond to the complaint.

On August 8, 2011, Defendants Maricopa County, Arpaio, Gan, Gregorio, Mitchell-Lopen, Hansen, Gaskins, Perez, and Johnson, the "County Defendants", filed a motion to dismiss all claims against these Defendants. See Doc. 5. The County Defendants argued, *inter alia*, that Plaintiff had not exhausted her administrative remedies, precluding her section 1983 claim, and that the state negligence claim was barred by Plaintiff's failure to comply with Arizona's notice of claim statutes the applicable statute of limitations. On September 1, 2011,

---

[1] The complaint alleges that, due to Defendants' negligence in March, April, and May of 2009, the bone in Plaintiff's leg became infected requiring hospitalization and surgery performed in June of 2009. Plaintiff alleges that, as a result of Defendants' negligence, Plaintiff's leg is deformed and she is disabled and disfigured. Plaintiff further alleges that, as a result of Defendants' negligence, during her hospitalization it was necessary for medical staff to insert a "pick" line and that as a result of the pick line Plaintiff has a pulmonary embolism and her health is permanently damaged.

1  Defendants Arcadia Radiology and Nocera filed an answer to the
2  complaint.
3       On September 22, 2011, Plaintiff docketed an amended
4  complaint.  See Doc. 10.  On September 23, 2011, the County
5  Defendants filed a motion to strike the amended complaint.  See
6  Doc. 12.  Defendants Arcadia Radiology and Nocera joined the
7  motion to strike on September 27, 2011.  See Doc. 13.
8       In an order issued November 7, 2011, the Magistrate
9  Judge denied the motion to strike and granted the motion to
10 amend the complaint; the motion to amend was granted only
11 insofar as Plaintiff sought leave to assert she had complied
12 with the state notice of claim statute and only because this
13 proposed amendment was not facially futile.  See Doc. 26.  The
14 Magistrate Judge noted that Plaintiff's alleged failure to
15 exhaust her section 1983 claim was an issue which was more
16 properly resolved in a motion to dismiss, rather than a motion
17 to amend a complaint.
18      On November 7, 2011, the District Court denied the
19 motion to dismiss at Doc. 5 as moot without prejudice.  See Doc.
20 27.
21      On November 18, 2011, Defendants Arcadia Radiology and
22 Nocera filed an answer to the amended complaint.  See Doc. 29.
23      On November 15, 2011, the County Defendants filed a
24 motion to dismiss the claims stated against these defendants in
25 the amended complaint.  See Doc. 28.  Plaintiff responded to the
26 motion and also filed a motion to strike portions of the motion
27 to dismiss on December 6, 2011.  See Doc. 30 & Doc. 31.
28                              -3-

**Motion to Strike**

Plaintiff asserts:

> Plaintiff Marissa DeVault ("DeVault"), through counsel undersigned, pursuant to Rule 12(d), FRCP, respectfully requests the Court strike Defendants Exhibits 1, 2, 3, 4 and 8 and all argument raised regarding same in Defendants Motion to Dismiss for the reasons set forth in Plaintiff Response to the Motion to Dismiss First Amended Complaint, which is incorporate herein by this reference. These Exhibits and argument involve matters outside the pleadings and should not be addressed at this stage without an answer having been filed or any discovery having been conducted. In the alternative, Plaintiff requests leave to conduct discovery and to supplement her response upon completion of that discovery.

Doc. 31 at 1.

Defendants respond:

> Plaintiff's Motion is not well grounded and should be denied. The documents submitted by the Defendants establish that Plaintiff's lawsuit must be dismissed; Plaintiff now goes to great lengths to avoid that inevitable result. Rule 12(d), Federal Rules of Civil Procedure, provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." There is no requirement, as Plaintiff argues, that the documents submitted by Defendants be supported by authenticating record-keeper affidavits. The materials submitted are public records and/or documents created by Plaintiff herself. Yet Plaintiff tries to diminish the significant impact of these records because they establish that her claim is meritless and her efforts to avoid dismissal of this lawsuit are moribund.

Doc. 32 at 2.

Two of the exhibits Plaintiff seeks to strike, Exhibit 2 and Exhibit 8 to Defendants' motion to dismiss, relate to the issue of Plaintiff's alleged failure to exhaust her administrative remedies prior to filing a section 1983 claim. The Ninth Circuit Court of Appeals has held that the issue of whether a plaintiff's section 1983 suit is precluded by their failure to exhaust administrative remedies pursuant to section 1997e(a) is a matter in abatement which is properly addressed in an unenumerated motion pursuant to Rule 12, Federal Rules of Civil Procedure. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). See also Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). Matters outside the pleadings may be considered and factual disputes resolved when determining whether a section 1983 claim should be dismissed for failure to exhaust. See, e.g., Wyatt, 315 F.3d at 1119-20 ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact.").[2]

---

[2] "When ruling on a motion to dismiss, we may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Id. at 899-900 []. We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. Id. at 900. We need not accept as true conclusory allegations

-5-

Accordingly, with regard to Exhibit 2 and Exhibit 8 to the motion to dismiss, the exhibits are properly considered in the context of the motion to dismiss, without requiring Plaintiff the opportunity to conduct discovery to ascertain their authenticity, which Plaintiff does not seem to actually contest, and the Magistrate Judge will recommend that the motion to strike be denied.

**Motion to Dismiss**

Count I of the amended complaint asserts a violation of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff alleges the "Medical Defendants" (all Defendants except Sheriff Arpaio and Maricopa County) are liable to Plaintiff based on their deliberate indifference to Plaintiff's serious medical needs. Count I alleges Defendant Maricopa County knowingly and intentionally allowed the other Defendants to violate Plaintiff's constitutional rights and that the policies and procedures established by Maricopa County for the medical care of inmates is deficient, inadequate, and violates the United States constitution. In the amended complaint Plaintiff does not allege any action of Sheriff Arpaio which violated Plaintiff's federal constitutional rights. Count I seeks punitive damage against the individual Defendants in addition to compensatory damages, damages for pain and suffering, and

---

that are contradicted by documents referred to in the complaint. <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003). <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1030-31 (9th Cir. 2008).

-6-

attorneys' fees and costs.

Count II of the amended complaint states a cause of action against the Medical Defendants based on Arizona state tort law for negligence and gross negligence based on the theory of medical malpractice. Plaintiff also alleges Maricopa County is liable for the medical malpractice of those providing medical care to inmates and that Sheriff Arpaio is liable for failure to train jail personnel adequately to prevent medical malpractice in the jails. Pursuant to this claim Plaintiff seeks compensatory and consequential damages.

The County Defendants seek to have Plaintiff's claims against them dismissed. Defendants assert Plaintiff failed to exhaust her administrative remedies before filing her federal law claim, precluding relief on Count I. Defendants also contend Plaintiff failed to timely serve a notice of claim pursuant to state law, barring Plaintiff's state-law based claims against the County Defendants.

Defendants assert Plaintiff failed to file suit against the County Defendants within the one-year statute of limitations. Defendants further argue Maricopa County cannot be vicariously liability for negligence claims where there is no claim for negligence against the individual medical Defendants. Defendants also contend Plaintiff has failed to state a claim against Sheriff Arpaio for failure to train.

Defendants allege:

> Prior to her incarceration, Plaintiff sustained a significant self-inflicted injury to her ankle... Plaintiff underwent surgery at Scottsdale Osborn Hospital for the placement of pins and a plate to stabilize the ankle.
> On February 20, 2009, Plaintiff was arrested in connection with the murder of her husband, and was transported to the Maricopa County Sheriff's Office Fourth Avenue Jail Facility where she was processed and booked. After intake, Plaintiff was transferred to the Infirmary at the Lower Buckeye Jail. On March 10, 2009, Plaintiff was seen by Defendant Dr. Gan who noted and documented that Plaintiff had redness and a greenish stain on her leg bandages. Plaintiff was seen again by Dr. Gan on March 26, 2009; at that time, puss (sic) came out of Plaintiff's wound when Dr. Gan pushed on the wound. Dr. Gan recognized that Plaintiff's wound was infected, so he cleaned out the wound and immediately transferred Plaintiff to Scottsdale Osborn Hospital. Plaintiff was released from the hospital back to the Lower Buckeye Jail Infirmary on March 30, 2009.
> While being treated at the Infirmary, Plaintiff received her antibiotics as ordered by the surgeon. Once she completed all of her antibiotics on May 14, 2009, Plaintiff was discharged from the Infirmary and transferred to general population at the Estrella Jail facility pursuant to the orders of Defendant Dr. Gregorio.
> On May 24, 2009, Plaintiff slipped in her cell and re-injured her leg. A few days later, Plaintiff was taken to Maricopa Medical Center wherein she was diagnosed with having MRSA – an antibiotic resistant staph infection. Plaintiff received treatment at Maricopa Medical Center for the infection.
> Plaintiff's lawsuit alleges state law claims of negligence/medical malpractice and federal claims based upon 42 U.S.C. § 1983 for deliberate indifference to her medical needs.

-8-

**Plaintiff's section 1983 claims**

The County Defendants contend Plaintiff's section 1983 claims must be dismissed because Plaintiff did not exhaust her administrative remedies.

Prisoners are required to exhaust all "available" remedies before seeking relief pursuant to section 1983. See, Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 2382-83 (2006). The Supreme Court has noted that requiring prisoners to exhaust their administrative remedies allows prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," which "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." Jones v. Bock, 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007), citing Woodford, 548 U.S. at 94-95, 126 S. Ct. at 2387-88.

Exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA") is governed by 42 U.S.C. § 1997e(a). This statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2003 & Supp. 2011). This language has been interpreted to require "that an inmate must exhaust [available remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S.

731, 741 n.6, 121 S. Ct. 1819, 1825 n.6 (2001). See also Morgan v. Maricopa County, 259 F. Supp. 2d 985, 990 (D. Ariz. 2003). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002).

A plaintiff must fully exhaust their administrative remedies *before* filing a section 1983 complaint. See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002). To fully exhaust a section 1983 claim, a prisoner must pursue his inmate grievance to the highest administrative level available to them. See, e.g., Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003); Neese v. Arpaio, 397 F. Supp. 2d 1178, 1180-81 (D. Ariz. 2005).

Exhaustion is an affirmative defense; establishing exhaustion of administrative remedies under the PLRA is not a pleading requirement or a jurisdictional prerequisite. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Therefore, section 1983 defendants "have the burden of raising and proving the absence of exhaustion." Id., 315 F.3d at 1119. See also Morgan, 259 F. Supp. 2d at 990-91 n.13. The failure to exhaust administrative remedies under the PLRA is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. See Wyatt, 315 F.3d at 1119.

> [A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process.

-10-

>                []. Relevant evidence in so demonstrating
> would include statutes, regulations, and
> other official directives that explain the
> scope of the administrative review process;
> documentary or testimonial evidence from
> prison officials who administer the review
> process; and information provided to the
> prisoner concerning the operation of the
> grievance procedure in this case, such as in
> the response memoranda in these cases. With
> regard to the latter category of evidence,
> information provided the prisoner is
> pertinent because it informs our
> determination of whether relief was, as a
> practical matter, "available." [].

Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).

Plaintiff contends that no administrative remedy was available because it was impossible for her to file a timely grievance due to medical disability:

> In this case, Plaintiff would have had to file her grievance within 48 hours of her discovery of the infection in her leg which occurred on May 29, 2009. When the unknown detention officer had Plaintiff take off the splint, and the open wound and infection was found (Plaintiff fainted as a result and fell to the ground), Plaintiff was immediately provided emergency medical treatment which resulted in her being whisked to Scottsdale Osborn Hospital where she received at least three surgeries from May 19, 2009 to June 13, 2009.
> Throughout this time, until the wound was finally closed, she lay in her hospital bed with IV's pumping pain killers and antibiotics into her body with open draining wound on her leg. Based on the MCSO grievance policy, Plaintiff was required to file the grievance for those causing her medical condition (based on the discovery rule), within 48 hours of May 29, 2009; i.e., by May 31, 2009. After that it is was late and there is no policy that allows late grievances. After the discovery of her infection, she received proper and timely medical care and treatment. There was nothing further to grieve and all that could be done for her medical condition was being done. There were

-11-

>                   no corrective actions, after the discovery of
>                   the infection that could have taken place.
>                   **Under these set of facts, there was no
>                   "available administrative remedy" to
>                   Plaintiff. Even though MCSO has an
>                   administrative grievance policy, because of
>                   Plaintiff's disability and emergency
>                   hospitalization, she had no timely access to
>                   that administrative process. Under this set
>                   of facts, there was in reality no grievance
>                   policy at all that she could take advantage
>                   of. By June 13, 2009, when she returned from
>                   the hospital, it was too late to file a
>                   grievance pursuant to the policy.**

Doc. 30 at 5 (emphasis in original).

>           Defendants reply:
>
>           As established by the affidavit of MCSO Sgt.
>           Selethia Down, attached as Exhibit 1, an
>           inmate who is out of the jail facility and in
>           the hospital during the grievance time frame
>           may submit or continue a grievance upon
>           his/her return to the jail. This procedure is
>           similar to the one successfully relied upon
>           by the plaintiff in the <u>Morano</u> case. Here,
>           Ms. DeVault did absolutely nothing to pursue
>           a grievance about her medical care or the
>           other issues that form the basis of her
>           federal law claims. DeVault abandoned the
>           matter completely when she returned to the
>           jail following her hospitalization....

Doc. 32 at 4-5.

The federal courts have held that, when prison officials have refused an inmate grievance forms or otherwise obstructed an inmate's access to a grievance proceeding, this could raise an inference that the prisoner had exhausted his "available" administrative remedies because no remedy was "available" in such a circumstance. See <u>Miller v. Norris</u>, 247 F.3d 736, 738, 740 (8th Cir. 2001). However, the federal courts have also concluded that an assertion that pursuing

administrative remedies would be futile does not excuse an individual's failure to exhaust his administrative remedies prior to filing a section 1983 action on the basis that in that circumstance no remedy was "available." See, e.g., Nyhuis v. Reno, 204 F.3d 65, 71-75 (3d Cir. 2000); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 536-37 (7th Cir. 1999); Neese, 397 F. Supp. 2d at 1182-83.

Plaintiff does not assert that, at any time subsequent to the events giving rise to her claims and prior to the date she filed the complaint, she inquired into the necessity or potential for administratively grieving her complaint that she was not provided with adequate medical care. Plaintiff does not allege that she was told that any such grievance was not available or that any such grievance would be denied per se as not timely. Additionally, Exhibit 8 to the motion to dismiss indicates that Plaintiff initiated grievances on May 23, 24, 25, June 19 and July 15.

Plaintiff argues that, as a matter of law, any attempt to grieve her claim would have been declared untimely and, accordingly, an administrative grievance procedure was therefore "unavailable" and her failure to exhaust should be excused. This type of post-hoc explanation for a plaintiff's failure to exhaust an available administrative remedy, thereby somehow rendering it unavailable, has been found by the federal courts to be unavailing. See Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (concluding that section 1997e(a) does not permit the court to consider an inmate's subjective beliefs in

-13-

determining whether administrative procedures are "available."); Perez, 182 F.3d at 537[3]; Brown, 422 F.3d at 936-37; Jones, 266 F.3d at 399.

Accordingly, the Magistrate Judge recommends that the motion to dismiss be granted with regard to Plaintiff's section 1983 claims against all Defendants named in this count of the complaint.

The Magistrate Judge further recommends that, no federal cause of action remaining, the Court decline to exercise supplementary jurisdiction over the remaining state claims. See McKinney v. Carey, 311 F.3d 1198, 1200-01 n.2 (9th Cir. 2002).

Accordingly,

**IT IS RECOMMENDED that** Plaintiff's motion to strike (Doc. 31) be denied with regard to Exhibit 2 and Exhibit 8 to the motion to dismiss and that the motion to strike be denied as moot with regard to the other documents Plaintiff seeks to strike.

---

[3] Such an ex post view of "futility" would contradict the holdings of Hallstrom and McNeil, for in both of those cases it became clear while the suit was ongoing that nonjudicial relief would not be forthcoming. As for the possibility that administrative remedies could be declared futile ex ante, without ever being tried: what would be the point of asking judges to be seers? Then the simplicity of § 1997e(a) would be lost, and instead of requiring exhaustion of administrative remedies it would lead to guesswork about counterfactual situations. No one can know whether administrative requests will be futile; the only way to find out is to try.

-14-

**IT IS FURTHER RECOMMENDED that** Defendants' motion to dismiss (Doc. 28) be granted with regard to Plaintiff's section 1983 claim and that Plaintiff's state-law based claim be remanded to the Superior Court.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation

-15-

of the Magistrate Judge.
/

DATED this 31st day of January, 2012.

                                          Mark E. Aspey
                                United States Magistrate Judge